FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 22, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

KEVIN CUNNINGHAM; JENA
GERKEN; ERIC MATTOX; KEVIN
MILLER; TOM PERKINS; DEVON
REESE; CHAD RILEY; DON
ROBERT; KELVIN SCHUMAN;
SCOTT SIMARD; RICHARD
STILES; SEAN STREGE and SEAN
BARAJAS,

                              Plaintiffs,

        v.

MISSION SUPPORT ALLIANCE,
LLC, a Delaware corporation,

                              Defendant.

NO:  4:18-CV-5060-RMP

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND GRANTING IN
PART AND DENYING IN PART
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

        Plaintiffs, a group of current and former Platoon Captains for the Hanford Fire

Department ("Captains") employed by Defendant Mission Support Alliance, LLC,

("MSA") challenged MSA's decision to classify the Captains as exempt from the

Fair Labor Standards Act's overtime pay rule.  MSA argued that the Captains'

primary duty was managing other firefighters and managing fire stations, which would exempt them from the FLSA's mandatory overtime pay rule because their primary duty was management. The Captains argued that none of the exemptions applied to them because their primary duty is as emergency responders, not managers. The parties also dispute the appropriate method of calculating any potential damages.

After reviewing the extensive briefing in this matter and considering the parties' arguments and the applicable law, the Court concludes that the Captains' primary duty is as emergency responders, and therefore, they are not exempt from the FLSA's overtime pay rule. Additionally, the Court concludes that the Captains should be paid overtime via the fluctuating workweek calculation method, that the Captains are entitled to liquidated damages, and that the statute of limitations for damages extends back two years. Therefore, the Court grants in part each party's motion for summary judgment and denies in part each party's motion for summary judgment.

## BACKGROUND

The Captains are thirteen current and former Fire Platoon Captains employed by MSA to work at the Hanford Fire Department. ECF No. 1 at 4. The United States contracted with MSA to provide fire department services for the Department of Energy's Hanford Site outside of Richland, Washington. ECF No. 37-3 at 5. The

Hanford Fire Department operates out of three fire stations, each tasked with responding to emergencies within or just outside of the Hanford Site. ECF No. 37-38 at 23.

The Hanford Fire Department utilizes a multi-tiered system of firefighter ranks that proceeds as follows from lowest ranked to highest: Fire Fighter, Lieutenant, Captain (also called Platoon Captain), Battalion Chief, and Chief. ECF No. 37-38 at 19. Between the three stations, four Captains (or Lieutenants acting as Captains) are always on duty. *Id.* at 37. The Captains work 48-hour shifts, or two days, and then get 96 hours, or four days, off, resulting in a regular workweek of either 48 or 72 hours. *Id.* at 26. Captains that worked prior to January 1, 2016, worked a schedule known as "Modified Detroit," in which the Captain would work a 24-hour shift, then receive a 24-hour rest period, work another 24-hour shift, receive another 24-hour rest period, work another 24-hour shift, and then receive 96 hours, or four days, of rest. *Id.* at 25. The result would be the same number of hours in a given workweek: the Captains would work either 48 hours or 72 hours. *Id.* at 40. Regardless of which schedule was used, when the Captains worked more than forty hours in a workweek, they were not compensated with time-and-one-half overtime pay because they were considered exempt from the FLSA's overtime pay requirement. ECF No. 37-40 at 4; ECF No. 39-3 at 8.

The Hanford Fire Department's stations are equipped with several different vehicles that may be used to respond to an emergency call. ECF No. 37-42 at 25–26. Any vehicle that is assigned to be used to respond to an emergency must be used to respond to that emergency, and a vehicle cannot leave unless all members, including a Captain, are onboard. ECF No. 37-42 at 21; ECF No. 37-38 at 66. A Captain cannot refuse to respond to a call if a call comes in for one of that Captain's vehicles; therefore, the Captain must stop whatever the Captain is currently doing, including sleeping, to respond to the call. ECF No. 37-42 at 52.

When Captains arrive on the scene of the emergency, they assume command of the emergency response if they are the most senior officer present. ECF No. 37-31 at 8. The types of emergencies to which the Captains might respond include fires, medical emergencies, rescue operations, and hazmat related incidents. ECF No. 37-35 at 6. Along with directing lower-ranked firefighters, the Captains handle hoses and engage in rescue operations as necessary for each emergency response. ECF No. 37-31 at 8. The Captains wear the same protective equipment as the other firefighters on scene. *Id.*

Based on the calculation of emergency response data between April of 2015 and December of 2018, the Captains spent less than 3% of their time on duty responding to emergency calls. ECF No. 40-4 at 5–6. When not responding to emergencies, the Captains are stationed at one of the three Hanford Fire Department

stations.  ECF No. 37-42 at 19.  They ensure that the vehicles are stocked with supplies and that the vehicles' systems, such as the fire hoses, are operational.  ECF No. 37-31 at 5.  The Captains also complete the same training that other firefighters are expected to complete, which relates to the Captains' physical fitness and preparedness for responding to certain types of emergencies.  ECF No. 37-38 at 54–59.

The Captains supervise the day-to-day activities of subordinate employees and delegate them tasks.  ECF No. 39-25 at 4; ECF No. 39-19 at 9.  The Captains initiate requests for station repairs and supplies.  ECF No. 39-26 at 10.  They prepare incident reports after responding to emergencies.  ECF No. 39-22 at 8.  The Captains also create pre-incident plans by touring certain facilities within the response range of the Hanford Fire Department "to provide information to responding personnel to help them safely and effectively manage emergencies with available resources." ECF No. 39-4 at 2.  The Captains do not have the authority to discipline subordinate employees.  ECF No. 37-42 at 83.  They do not create or alter department policies. ECF No. 37-38 at 73.  The Captains can make recommendations as to equipment purchases and supplies but they cannot make the decision to spend the Department's money.  *Id.* at 74.  They are not expected to write performance evaluations for subordinate officers.  *Id.*

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 5

For their work, the Captains are paid a fixed weekly salary that does not change depending on the number of hours that the Captains are scheduled to work in a given workweek. ECF No. 39-3 at 22. The only exception is if the Captains worked unscheduled overtime, which is any work "outside the normal schedule of hours," they are paid "at the base straight time rate" for the unscheduled overtime. *Id.* at 23.

The Captains filed this complaint, claiming that they were denied overtime pay in violation of the FLSA's overtime pay rule under 29 U.S.C. § 207(a). ECF No. 1. MSA argued that the Captains are exempt from overtime pay because they are highly compensated employees. ECF No. 14. Both parties filed motions for summary judgment. ECF Nos. 36 & 38.

## LEGAL STANDARD

When parties file cross-motions for summary judgment, the Court considers each motion on its own merits. *See Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). A court may grant summary judgment where "there is no genuine dispute as to any material fact" of a party's prima facie case, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). A key purpose of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 324.

## DISCUSSION

### *The Fair Labor Standards Act's Overtime Rule*

The Fair Labor Standards Act ("FLSA") provides that employees who work more than forty hours in a workweek shall be paid "at a rate not less than one and one-half times the regular rate at which he is employed" for every hour worked over forty. 29 U.S.C. § 207(a)(1). The Act provides many exemptions to the overtime pay rule and authorizes the Secretary of Labor to promulgate regulations creating and defining exemptions. 29 U.S.C. § 213(a). If an exemption applies to a certain employee, the overtime pay rule "shall not apply" to that employee. *Id.* An employer has the burden to prove that an exemption applies. *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124 (9th Cir. 2002).

Since the FLSA's enactment, its exemptions have been narrowly construed against the employers. *See Mitchell v. Ky. Fin. Co.*, 359 U.S. 290, 295 (1959). However, the Supreme Court recently reversed this rule because the FLSA gives no "textual indication" that its exemptions should be narrowly construed. *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018). "The narrow-construction principle relies on the flawed premise that the FLSA pursues its

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 7

remedial purpose at all costs." *Id.* Now, instead of a narrow construction, the exemptions must be given a "fair reading." *Id.*

### The Highly Compensated Employee Exemption

Applying the FLSA's overtime rule to the Captains, there is no dispute between the parties that the Captains have worked over forty hours a week in the past and that they were not paid FLSA overtime compensation for those hours worked over forty. *See* ECF No. 37-7 at 2 (defining the Captains' work schedule as containing a mix of 72-hour and 48-hour workweeks); ECF No. 37-6 at 13 (defining the Captains' overtime). However, the parties dispute whether the captains are exempt from the FLSA's overtime pay rule under the highly compensated employee exemption. ECF No. 36 at 33; ECF No. 38 at 11.

Highly compensated employees are exempt from mandatory overtime pay under the FLSA. 29 C.F.R. § 541.601. A highly compensated employee is an employee who (1) receives a total annual compensation of at least $100,000 at a weekly rate of $455 or more; (2) "customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee"; and (3) "has a primary duty that includes performing office or non-manual work." *Id.*

### The Compensation Element

The first element of the highly compensated employee exemption is that the employee receives a total annual compensation of at least $100,000 at a weekly rate of $455 or more. 29 C.F.R. § 541.601. MSA argues that the Captains' salaries meets both standards. ECF No. 38 at 15; ECF No. 39-8 at 7 (defining the Captains' weekly rate as above $455); ECF No. 39-14 at 7 (proving that the Captains made over $100,000 for each relevant year, except for Mr. Mattox in 2015). These facts are not refuted by the Captains. Therefore, the Court finds that MSA has proven that the Captains meet the first element of the highly compensated employee exemption.

### *The Performance of Certain Exempt Duties Element*

The second element of the highly compensated employee exemption is that the employee "customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative, or professional employee." 29 C.F.R. § 541.601(a)(2). A duty is "customarily and regularly" performed if it is performed "at a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. "Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks." *Id.*

MSA argues that the Captains customarily and regularly perform the same duties as an executive, administrative, or professional employee, such as the

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 9

management of the Hanford Fire Department, the performance of work directly related to the Fire Department's business operations, or the performance of work requiring an advanced degree in science. ECF No. 38 at 15; 29 C.F.R. §§ 541.100, 541.200, 541.300. The Captains do not dispute MSA's arguments. Therefore, the Court finds that MSA has proven that the Captains meet the second element of the highly compensated employee exemption.

### The Primary Duty Element

The third element of the highly compensated employee exemption is that the employee's primary duty "includes performing office or non-manual work." 29 C.F.R. § 541.601(d). The parties dispute whether the Captains' primary duty includes performing office or non-manual work. ECF No. 36 at 18; ECF No. 38 at 9.

To identify an employee's primary duty, the court identifies the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Determining an employee's primary duty must be done "based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id.* Factors to consider in the primary duty analysis "include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the

relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.*

In 2006, the DOL offered guidance on determining the primary duty and exempt status of first responders, including firefighters. 29 C.F.R. § 541.3(b)(1). Specifically, the DOL states that the executive, administrative, and professional overtime pay exemptions "do not apply to . . . fire fighters . . . regardless of rank or pay level, who perform work such as preventing, controlling or extinguishing fires of any type [or] rescuing fire, crime or accident victims." *Id.* The exemptions typically do not apply to firefighters because "their primary duty is not management of the enterprise in which the employee is employed . . . the performance of work directly related to management or general business operations of the employer or the employer's customers . . . [or] the performance of work requiring knowledge in an advanced type in a field of science or learning." 29 C.F.R. § 541.3(b)(2)–(4). Although not in the text of the regulation itself, the DOL also stated in the first responder regulation's preamble that "fire fighters . . . also cannot qualify as exempt under the highly compensated test in final section 541.601" because the firefighters' primary duty typically does not include the performance of office or non-manual work. 69 Fed. Reg. 22,122, 22,129–30

Case law has established that the first responder regulation does not supplant the primary duty analysis when determining the exempt status of certain first

responders.  *Morrison v. Cty. of Fairfax, Va.*, 826 F.3d 758, 767 (4th Cir. 2016).

Instead, the first responder regulation "clarifies the application of the primary duty

test to first responders like the Platoon Captains, through the example offered in

subsection (b)(2)," namely, that firefighters are not exempt employees "merely

because the . . . fire fighter also directs the work of other employees in the conduct

of . . . fighting a fire."  *Id.*  The first responder regulation declares a broad principle

that "management-like tasks undertaken in conjunction with, or directly related to,

primary first responder duties do not turn a first responder into an exempt

executive or administrator."  *Id.* (citing *Mullins v. City of N.Y.*, 653 F.3d 104, 115

(2d Cir. 2011)).

The Court first employs the primary duty analysis factors from the DOL's

regulations: "the relative importance of the exempt duties as compared with other

types of duties; the amount of time spent performing exempt work; the employee's

relative freedom from direct supervision; and the relationship between the

employee's salary and the wages paid to other employees for the kind of

nonexempt work performed by the employee."  29 C.F.R. § 541.700(a).  The first

factor favors the Captains.  Regardless of what the Captains are doing at the

station, the Captains must be prepared to leave the station in response to an

emergency call in one minute during the day and in two minutes at night.  ECF No.

37-38 at 68.  The Captains do not have a choice; if their vehicle is assigned to be

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 12

1   used to respond to an emergency call, the Captains must respond to the call. ECF

2   No. 37-42 at 52; ECF No. 37-43 at 7. Because responding to emergency calls

3   takes preference over any other activity that the Captains might be doing at the

4   station, and because responding to an emergency is a non-exempt duty, the first

5   factor favors the Captains. 29 C.F.R. § 541.700(a).

6           The second primary duty analysis factor is the amount of time spent

7   performing exempt work. 29 C.F.R. § 541.700(a). The DOL advises that the

8   "amount of time spent performing exempt work can be a useful guide in

9   determining whether exempt work is the primary duty of an employee." 29 C.F.R.

10  § 541.700(b). For example, employees who spend more than half of their time

11  performing exempt work "will generally satisfy the primary duty requirement" for

12  that specific exemption. *Id.* "Time alone, however, is not the sole test, and

13  nothing in this section requires that exempt employees spend more than 50 percent

14  of their time performing exempt work." *Id.*

15          The Captains spend most of their time waiting to respond to calls. Based on

16  the calculation of emergency response data between April of 2015 and December

17  of 2018, the Captains spent less than 3% of their time on duty responding to

18  emergency calls. ECF No. 40-4 at 5–6. This means that more than 97% of the

19  Captains' time is spent at the station, waiting for the calls to come in. *Id.* But the

20  Captains are not without work during the downtime. The Captains supervise the

21  ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
    MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART
    AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
    JUDGMENT ~ 13

day-to-day activities of Fire Fighters and Lieutenants and delegate them tasks. ECF No. 39-25 at 4; ECF No. 39-19 at 9. The Captains initiate requests for station repairs and supplies. ECF No. 39-26 at 10. They prepare incident reports after responding to emergencies. ECF No. 39-22 at 8.

However, the Captains complete various duties to ensure that they, and the rest of the firefighters at the station, are prepared for emergency response. They participate in, and ensure others have completed, training regiments created by a training group that ensure that the firefighters are prepared for future emergency responses. ECF No. 39-29 at 8. The Captains are responsible for ensuring that the emergency response vehicles and equipment are operational and safe for use. ECF No. 39-26 at 10. The Captains also create pre-incident plans by touring certain facilities within the response range of the Hanford Fire Department "to provide information to responding personnel to help them safely and effectively manage emergencies with available resources." ECF No. 39-4 at 2.

Thus, while the Captains only spend a minimal amount of time responding to emergencies and another amount of time completing administrative or managerial tasks, a good portion of the Captains' time is spent preparing for the next emergency response. Indeed, the very nature of emergency response work involves waiting for the next call. "Any given day for a fire fighter may consist of extended periods of boredom, punctuated by periods of urgency and moments of

terror." *Barrows v. City of Chattanooga, Tenn.*, 944 F. Supp. 2d 596, 605 (E.D. Tenn. 2013). Additionally, the recitation of duties does not include normal things that the Captains do during their time on duty, such as eating or sleeping. *See* ECF No. 37-6 at 21. Considering the undisputed facts, the Court concludes that the Captains spend less than 50 percent of their time performing management-type work. 29 C.F.R. § 541.700(b). Therefore, the Court finds that the second primary duty factor weighs in favor of the Captains.

The third primary duty factor is the employee's relative freedom from direct supervision. 29 C.F.R. § 541.700(a). The Captains are senior to Lieutenants and Fire Fighters and are subordinate to Battalion Chiefs and the Fire Chief. ECF No. 37-38 at 11. Oftentimes, the Captains are the most senior officers present at a station, leaving the Captains with the responsibility of managing the station's affairs. ECF No. 39-16 at 7. Nonetheless, there is always a Battalion Chief on duty, and the Captains must follow the Battalion Chief's orders. ECF No. 37-14 at 11; ECF No. 37-42 at 5–6. The Court finds that the third factor does not favor either party.

The fourth primary duty factor is the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. 29 C.F.R. § 541.700(a). In *Morrison*, the Fourth Circuit found that this factor favored the fire captains when undisputed evidence

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

showed that the rank below the fire captains, also called lieutenant, made more money than the fire captains when you factored in overtime pay, resulting in some lieutenants requesting that their promotions to fire captain be delayed. *Morrison*, 826 F.3d at 771–72. Similar testimony or evidence was not provided in this case, and the record shows that Captains have a larger weekly salary than the Lieutenants or Fire Fighters below them. *See* ECF No. 39-8 at 5–7. The fourth primary duty factor favors MSA.

However, the suggested primary duty factors are not exhaustive. 29 C.F.R. § 541.700(a) ("Factors to consider when determining the primary duty of an employee include, but are not limited to . . ."). The main inquiry is determining the "principal, main, major or most important duty that the employee performs . . . with the major emphasis on the character of the employee's job as a whole." *Id.* Here, the principal, main, major, or most important duty that the Captains perform is emergency response. Regardless of the time of day or whatever the Captains already are doing, if an emergency call comes in and a Captain's vehicle is assigned to the call, the Captain must respond to the call, and his vehicle cannot leave without him. ECF No. 37-42 at 52; ECF No. 37-43 at 7.

The first responder regulation supports this outcome. The first responder regulation does not replace the primary duty analysis, but it does clarify that first responders are not exempt employees "merely because [the first responder] also

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

directs the work of other employees in the conduct of an investigation or fighting a fire." 29 C.F.R. § 541.3(b). In fact, the regulation's preamble states that "high-level police and fire officials" are exempt if their primary duties are managerial, such as evaluating performance, enforcing and imposing penalties, making personnel recommendations, coordinating and implementing training programs, maintaining payroll and personnel records, handling community complaints, preparing budgets and controlling expenses, ensuring operational readiness by inspecting personnel and equipment, deciding how to allocate personnel, managing distribution of equipment, and maintaining inventory of property and supplies. 69 Fed. Reg. at 22,130.

The undisputed facts show that although the Captains play a role in the activities considered by the first responder regulation to be exempt activities, the Captains do not have the final authority on any of those decisions. The Captains do not have the authority to discipline subordinate employees. ECF No. 37-42 at 83. They do not create or alter department policies. ECF No. 37-38 at 73. The Captains can make recommendations as to equipment purchases and supplies but cannot authorize the expenditure of the Department's money. *Id.* at 74. They are not expected to write performance evaluations for subordinate officers. *Id.* The Captains are ultimately the people who call and offer overtime to off-duty firefighters when vacancies need to be filled, but the Captains perform this duty as

a part of an predetermined process negotiated in the collective bargaining agreement ("CBA") without the authority to bypass the process. ECF No. 37-42 at 33–34; ECF No. 37-4 at 5–11. The Captains participate in the hiring and promoting processes, but as appointed representatives of the union rather than as representatives of MSA or the Hanford Fire Department. *See, e.g.*, ECF No. 39-17 at 10. Under the CBA, the Captains act "[a]s assigned by the [Battalion Chief]." ECF No. 37-4 at 5. In short, the Captains do not have the authority to perform many of the duties that the first responder regulation identifies as exempt duties. 69 Fed. Reg. at 22,130.

Other federal courts interpreting the first responder regulation's application to employees of similar rank to the Captains have concluded that their primary duty is emergency response. In *Morrison*, the fire captain plaintiffs spent "only a small portion of their time actually fighting fires," meaning a significant portion of their time was spent at the fire station. *Morrison*, 826 F.3d at 763. At the fire station, the fire captains spent most of their time preparing for their first-response duties, including daily emergency response training and physical fitness training. *Id.* When not training, the fire captains created annual evaluations for the firefighters in their crews, updated station policies to conform with county policies, and accounted for supplies needed at the station. *Id.* at 764. The Captains did not "set or control the budget, hire or fire employees, set minimum staffing levels,

change employees' work schedules, or approve overtime." *Id.* The Fourth Circuit concluded "that the Captains' primary job duty is . . . emergency response." *Id.* at 769.

Similarly, in *Mullins*, the Second Circuit held that New York City police sergeants were non-exempt first responders because of the first responder regulation's impact on the primary duty test, even though the sergeants directed the actions of others when responding to an emergency and wrote incident reports. *Mullins v. City of N.Y.*, 653 F.3d 104, 121 (2d Cir. 2011). The Eastern District of Tennessee found that a fire captain was non-exempt because his primary duty was first response, despite his various managerial tasks that he completed at the fire station in between emergencies. *Barrows*, 944 F. Supp. 2d at 605. The Central District of California held that emergency medical services captains, of similar rank to the Captains in this case, were non-exempt because most of the duties that their employer claimed were managerial or administrative were done in preparation for emergency response. *Carson v. City of L.A.*, No. CV 15-7057-JFW (KLSx), 2016 WL 7647681, at *8 (C.D. Cal. Sept. 22, 2016). The majority of federal courts surveyed that have analyzed the primary duty for similarly ranked first responders since the first responder regulation's enactment have found that the primary duty of the first responders is emergency response.

MSA argues that the above cases are irrelevant because of the Supreme Court's recent decision that FLSA exemptions should be given a "fair reading" rather than construed narrowly against the employer. *Encino Motorcars*, 138 S. Ct. at 1142; ECF No. 38 at 20 n.2. Several of the above cases did rely on the pre-*Encino Motorcars* doctrine of strictly construing the construction of FLSA exemptions against employers. *See, e.g.*, *Morrison*, 826 F.3d at 768. Nonetheless, *Encino Motorcars* does not make the reasoning in the other cases any less persuasive. Further, the conclusion in this case results from a "fair reading" of the highly compensated employee exemption in combination with the first responder regulation. *See Encino Motorcars*, 138 S. Ct. at 1142. *Encino Motorcars* did not eliminate the guidance provided by several decades of FLSA precedent.

MSA argues that the managerial duties performed by the Captains are vital to the operation of the Hanford Fire Department, which automatically categorizes the managerial duties as the Captains' primary duty. ECF No. 38 at 18. The cases cited by MSA are inapposite to the current dispute. One case involved the interpretation of a group of regulations relevant to the administrative employee exemption, not the highly compensated exemption. *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1125–26 (9th Cir. 2002). Another involved an analysis of the duties of a Chief of Police, who was "singularly responsible for managing and operating the department," which is a set of responsibilities that differs from the

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

Captains in this case.  *Reed v. City of Asotin*, 917 F. Supp. 2d 1156, 1163 (E.D. Wash. 2013).  Two other cases involved employees who mainly managed the day-to-day operations of their respective businesses, which, in this case, is a duty assigned to the Battalion Chiefs, rather than the Captains.  *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001); *Kreiner v. Dolgencorp, Inc.*, 841 F. Supp. 2d 897, 906 (D. Md. 2012).  While the administrative work performed by the Captains is surely beneficial to the Hanford Fire Department and MSA, the Captains' emergency response work takes precedence, because they must respond to emergencies when they are called.  ECF No. 37-42 at 52; ECF No. 37-43 at 7.

MSA points to language in the 2013 Collective Bargaining Agreement between MSA and its employees to prove that the Captains are exempt employees. ECF No. 39 at 4.  The CBA does state that the Captains are exempt employees. ECF No. 39-3 at 8.  However, "FLSA rights cannot be abridged by contract or otherwise waived" and "congressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation arrangement." *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740–41 (1981).  The CBA does not render the FLSA's protections inoperative.

Ultimately, considering the primary duty factors, the first responder regulation, the undisputed facts, and the character of their job as a whole, the Captains' primary duty is emergency response.  29 C.F.R. § 541.700(a).  To be

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21

sure, the Captains perform a number of administrative and managerial duties.

Nonetheless, responding to an emergency takes priority over all of those duties.

Because the Captains' primary duty is emergency response, which does not

"include office or non-manual work," the Captains do not qualify for the highly

compensated employee exemption to the FLSA's overtime pay rule. Accordingly,

the Court finds that the Captains are not exempt from overtime pay, and summary

judgment on the issue of liability is granted for the Captains.

***The Fluctuating Workweek Calculation of Damages***

The parties dispute whether damages should be calculated via the fluctuating

workweek method. ECF No. 36 at 38; ECF No. 38 at 23.

The fluctuating workweek is a method by which overtime pay is calculated

when the employee in question works "on a salary basis" and "may have hours of

work which fluctuate from week to week," but still receives "such fixed amount as

straight time pay for whatever hours he is called upon to work in a workweek,

whether few or many." 29 C.F.R. § 778.114(a). Instead of setting an hourly rate

of pay, from which the one and a half rate is calculated for overtime pay, the

fluctuating workweek sets a fixed weekly rate of pay. *Id.* If the employee works

more than forty hours in a given workweek, the fixed weekly pay is divided by the

number of hours worked to determine that specific week's hourly rate of pay. *Id.*

The employee is then compensated for all of the time worked that week at the

hourly rate and an additional half pay for every hour worked over forty hours in that week. *Id.* The fluctuating workweek can only apply, however, if there is a "clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek." *Id.* This method of calculation is almost always employer friendly. *Russell v. Wells Fargo & Co.*, 672 F. Supp. 2d 1008, 1012 (N.D. Cal. 2009).

The Captains argue that the fluctuating workweek overtime calculation method is inapplicable in failed exemption cases. ECF No. 36 at 38. There is some support in the case law for this position. Those courts have reasoned that an effective clear mutual understanding is absent in misclassification cases because such understanding cannot exist unless overtime pay is being provided in the first place. *See, e.g.*, *Russell*, 672 F. Supp. 2d at 1014. Additionally, those courts interpret section 778.114(c) to state that the fluctuating workweek calculation is applicable only when overtime payments are made contemporaneously, precluding the method from being applied in a failed exemption case. *See, e.g.*, *id.* Other district courts in the Ninth Circuit have followed *Russell*'s reasoning in denying the use of the fluctuating workweek in misclassification cases. *Boyce v. Indep. Brewers United Corp.*, 223 F. Supp. 3d 942, 946–48 (N.D. Cal. 2016); *McCoy v. N. Slope Borough*, No. 3:13-CV-00064-SLG, 2013 WL 4510780, at *18–19 (D. Alaska Aug. 26, 2013); *Zulewkski v. Hershey Co.*, No. CV 11-05117-KAW, 2013

WL 633402, at *3–4 (N.D. Cal. Feb. 20, 2013); *Blotzer v. L-3 Commc'ns Corp.*, No. CV-11-274-TUC-JGZ, 2012 WL 6086931, at *9–12 (D. Ariz. Dec. 6, 2012). However, the Ninth Circuit has yet to address this issue. *Boyce*, 223 F. Supp. 3d at 945. The Captains argue that the Court should follow *Russell* and its progeny and reject the use of the fluctuating workweek calculation method in this misclassification case. ECF No. 36 at 38.

*Russell*'s first argument is that "an effective clear mutual understanding is absent in misclassification cases" because there cannot be a clear mutual understanding when the employees are not being paid overtime in the first place. *Russell*, 672 F. Supp. 2d at 1014. However, this misstates the "clear mutual understanding" requirement. Based on the text of 29 C.F.R. § 778.114, several courts have ruled that the "clear mutual understanding" obligation does not require that the employer show that the employees knew exactly how overtime pay was calculated; rather, the employer only needs to show that, while hours worked in a given workweek may change from week to week, the weekly pay will not change. *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 636–37 (5th Cir. 2001) (citing cases); *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 40 (1st Cir. 1999) (holding that the FLSA does not require a clear mutual understanding of "how [an employee's] overtime premiums should be calculated").

There does not need to be an agreement that overtime will be calculated using the fluctuating workweek method to meet the "clear mutual understanding" requirement. Instead, the employer must show that there was a "clear mutual understanding . . . that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number." 29 C.F.R. § 778.114(a). Limiting the "clear mutual understanding" requirement to the fixed salary rather than extending it to the method by which overtime is calculated comports with the origin of the fluctuating workweek calculation. Initially, the fluctuating workweek formula was created to determine an employee's regular rate of pay to calculate the correct overtime payment in accordance with section 207(a), which states that an employee shall be paid "at a rate not less than one and one-half times the regular rate" for overtime hours. *See Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 579–80 (1942) *superseded on other grounds by statute*, Portal-to-Portal Act of 1947, 29 U.S.C. § 260, *as recognized in Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128 n.22 (1985). Because the employee's salary does not change depending on the number of hours that the employee works in a week, the employee's regular rate of pay is the salary divided by the number of hours worked, whatever those hours might be in the given week. *Id. Overnight Motor* shows that the employees do not need to have a "clear mutual understanding" that overtime pay will be calculated pursuant to the fluctuating

workweek; rather, the employees only need to have a "clear mutual understanding" that their salary is fixed and will not change regardless of hours worked, and that fixed rate will be used to determine the employees' "regular rate of pay" under section 207(a).

As explained in *Overnight Motor* and above, the clear mutual understanding does not need to be how overtime is to be paid, but whether the employee is paid on a fixed weekly rate regardless of hours worked, because the clear mutual understanding applies to determining the employee's "regular rate of pay" to be used in calculating overtime pay under section 207(a). *Overnight Motor*, 316 U.S. at 579–80. The text of section 778.114 supports this interpretation of the clear mutual understanding requirement: "Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, . . . such a salary arrangement is permitted by the Act . . . if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay." 29 C.F.R. § 778.114(a). The structure of the sentence indicates that the "clear mutual understanding" applies to a fixed salary for the hours worked, but does not apply to the extra compensation clause because the two clauses are separated by the phrase: "such a salary arrangement is permitted by the

Act." *Id.* Therefore, the Court respectfully disagrees with *Russell*'s first argument against retroactive application of the fluctuating workweek calculation.

*Russell*'s second argument is that section 778.114 requires a contemporaneous payment of overtime benefits for the fluctuating workweek calculation to apply, foreclosing the method's use in misclassification cases. *Russell*, 672 F. Supp. 2d at 1014. This argument comes from the last sentence in section 778.114(c): "On the other hand, where all the facts indicate that an employee is being paid for his overtime hours at a rate no greater than that which he receives for nonovertime hours, compliance with the Act cannot be rested on any application of the fluctuating workweek overtime formula." 29 C.F.R. § 778.114(c); *Russell*, 672 F. Supp. 2d at 1012. The Court does not interpret this sentence to require contemporaneous overtime payment for the fluctuating workweek to apply. This sentence states that an employer, having been accused of not following section 207(a)'s overtime pay rule, cannot argue that the fixed weekly rate incorporates both regular pay and overtime pay while still complying with section 206's minimum wage requirements. Essentially, an employer cannot say that because the fixed weekly rate could be calculated to meet the minimum wage and overtime pay requirements, the employer should not be liable. It does not require, as the Captains argue and *Russell* and other courts state, that overtime

payments must be made contemporaneously for the fluctuating workweek formula to apply.

*Russell* also cites to a passage from *Overnight Motor* to support its interpretation of the last sentence of section 778.114(c) to require contemporaneous payment of overtime, but that passage does not support *Russell*'s interpretation, and instead supports the Court's interpretation above. The employer in *Overnight Motor* argued that it complied with the FLSA because the amount it paid its employees was "sufficiently large to cover both base pay and fifty per cent additional for the hours worked over the statutory maximum without violating [minimum wage requirements]." *Overnight Motor*, 316 U.S. at 581. But the Supreme Court rejected that argument, holding that "[i]mplication cannot mend a contract so deficient in complying with the law." *Id.* This supports the Court's interpretation of the last sentence of section 778.114(c): it prevents employers from arguing technical compliance with the FLSA after being accused of violations, rather than requiring contemporaneous payment of overtime for the fluctuating workweek calculation method to apply.

Ultimately, the Court rejects the Captains' arguments and finds that the fluctuating workweek can be used to calculate overtime in a misclassification case. This finding is supported by the original understanding of the fluctuating workweek and the DOL's guiding principles. Additionally, while not binding on

this Court, several Courts of Appeals that have considered this issue have come to this same conclusion. *See Black v. SettlePou, P.C.*, 732 F.3d 492, 497–98 (5th Cir. 2013); *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1311 (11th Cir. 2013); *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 678–79 (7th Cir. 2010)[1]; *Clements v. Serco, Inc.*, 530 F.3d 1224, 1230 (10th Cir. 2008); *Valerio*, 173 F.3d at 40; *Roy v. Cty. of Lexington, S.C.*, 141 F.3d 533, 547 (4th Cir. 1998).

The Captains argue that there was no clear mutual understanding that their salary was intended to cover their hours worked because of the difference of

---

[1] *Urnikis-Negro* is unique in that it rejects any application of section 778.114 to calculating damages in any FLSA case because the Seventh Circuit found that the rule is "forward looking." 616 F.3d at 677. Further, it agrees with the arguments that the Captains make here, which is that section 778.114 requires a clear mutual understanding of both the fixed weekly nature of the compensation and how overtime premiums will be paid, as well as the contemporaneous payment of overtime premiums. *Id.* at 677–79. However, the Seventh Circuit still held that the fluctuating workweek calculation is appropriate in misclassification cases because of *Overnight Motor* (which the Seventh Circuit refers to as *Missel*): "Urnikis-Negro, like Missel, was paid a fixed weekly sum for any and all hours that she worked. Like Missel, she routinely worked substantial amounts of overtime. And like Missel, she never received any premium for the overtime hours she worked. The Supreme Court held that in this situation, the employee's regular rate of pay for a given week is calculated by dividing the fixed weekly wage by the total number of hours worked in that week." *Id.* at 681. If the Seventh Circuit's reasoning in *Urnikis-Negro* were applied in the present case, the Court finds that the fluctuating workweek method would still be the appropriate calculation method.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 29

compensation between scheduled and unscheduled overtime. ECF No. 51 at 11–13. Under the CBA between the Captains and MSA, the Captains were paid a fixed weekly rate of pay for all scheduled hours worked, including scheduled overtime hours (that is, those hours worked in excess of forty hours that the Captains knew that they would work) and an additional "straight time" pay for all unscheduled overtime hours (that is, those hours worked in excess of forty hours that were not scheduled, but the Captains worked anyway, because they covered a shift for someone else). ECF No. 39-3 at 22–23. Because the Captains' salary does not cover all hours that the Captains worked (i.e., the unscheduled overtime hours), the Captains argue that there is no clear understanding that the salary was intended to cover all hours worked. ECF No. 51 at 11–13.

The text of section 778.114 guides the Court once again. The text reads that "[w]here there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek . . ." 29 C.F.R. § 778.114(a). The amount that the Captains were paid for unscheduled overtime hours, the additional straight time pay, is an overtime premium because it is extra compensation given for work outside of the Captains' regular schedules. *See* ECF No. 39-3 at 23 (defining the Captains' additional straight time rate as "Overtime Pay for Work Outside Normal Schedule of Hours"). Overtime premiums are "[c]ertain premium payments made by employers for work

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 30

in excess of or outside of specified daily or weekly standard work periods or on certain special days."  29 C.F.R. § 778.201(a).  As this definition shows, the additional straight time pay that the Captains received working unscheduled overtime is an "overtime premium" within the meaning of section 778.114(a), and overtime premiums are excluded from the "fixed salary" analysis.  29 C.F.R. § 778.114(a).

As far as the Captains' salary is concerned, there was a clear mutual understanding that the salary covered the Captains' regular work schedules, regardless of whether the Captains worked 48 hours or 72 hours in a given workweek, and that they would receive an overtime premium for hours worked in excess of those scheduled.  ECF No. 39-3 at 21 (defining the Captains' schedule of hours to include 72-hour workweeks and 48-hour workweeks); 23 (overtime premium description).  While it is true that the Captains were not being paid FLSA overtime, section 778.114 simply states "overtime premium," not "FLSA overtime."  29 C.F.R. § 778.114(a); *see also* 29 C.F.R. § 778.201(a) (defining overtime premiums).  Therefore, the Captains' arguments are unpersuasive.

It is undisputed in this case that the Captains received a fixed weekly salary for their scheduled hours worked, whether those scheduled hours were 48 or 72, in a given workweek.  ECF No. 51 at 11; ECF No. 55 at 15.  This means that there was a "clear mutual understanding" that the Captains would receive the same

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 31

weekly salary regardless of the number of scheduled hours that the Captains would work in a given workweek. *See* 29 C.F.R. § 778.114(a). Accordingly, the fluctuating workweek is the correct method by which the Captains' "regular rate of pay" will be determined in order to calculate the amount of overtime pay that the Captains are owed.

Considering the findings above, the Court holds that the Captains are due overtime payments via the fluctuating workweek method.[2]

### Liquidated Damages

The parties dispute whether liquidated damages are appropriate. ECF No. 36 at 39; ECF No. 38 at 29.

An employer that violates the FLSA's overtime pay rule "shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). But "if the employer shows to the satisfaction of the court that the act or omission giving rise to [FLSA liability] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, . . . the court may, in its sound discretion, award

---

[2] Given the Court's finding here, the Court declines to analyze MSA's section 259 argument regarding the fluctuating workweek. ECF No. 40 at 32.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 32

no liquidated damages." 29 U.S.C. § 260. The determination of the employer's good faith and reasonable grounds for its actions is a mixed question of law and fact and should be determined with objective tests. 29 C.F.R. § 790.22(c). Notwithstanding the regulation, the Ninth Circuit evaluates the question of liquidated damages with a subjective good faith test and an objective reasonable grounds test. *See Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 920 (9th Cir. 2003).

Under the FLSA, "[d]ouble damages are the norm, single damages the exception." *Local 246 Util. Workers Union v. S. Cal. Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996). Liquidated damages are compensation and are not punitive. *Id.* The employer holds the "difficult" burden in proving that it acted in good faith and a reasonable belief that it was not violating the FLSA. *Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir. 2003). The employer must "show that it actively endeavored to ensure" FLSA compliance. *Id.* Mere "bald assertions" that the employer thought it was following the FLSA does not show a good faith effort to comply with the FLSA. *Equal Emp't Opportunity Comm'n v. First Citizens Bank of Billings*, 758 F.2d 397, 403 (9th Cir. 1985). Additionally, post hoc rationalizations for the mistaken exemption are not evidence of good faith or reasonable belief. *Alvarez*, 339 F.3d at 910.

MSA points to "a singularly robust mountain of evidence" to prove its burden that MSA acted with good faith and a reasonable belief that the Captains were truly exempt from the FLSA's overtime rule. ECF No. 38 at 30. The first piece of evidence that they point to is the *Porter* case. *Id.* at 31. In *Porter*, the Ninth Circuit held that firemen employed in the Richland and North Richland area by General Electric were entitled to overtime pay on the fluctuating workweek calculation. *Gen. Elec. Co. v. Porter*, 208 F.2d 805, 813 (9th Cir. 1953). MSA argues that *Porter* justifies their classification because the predecessor employees to the Captains did not join the *Porter* lawsuit, showing that the exemption was made in good faith and that the conclusion does not change "now that the Platoon Captains changed their minds." ECF No. 38 at 31. MSA also argues that its preceding contractors all classified the Captains as exempt workers for the previous nearly-seventy years. *Id.*

The contention that MSA could rely on a nearly seventy-year-old case that did not involve employees equivalent to today's Captains, let alone today's Captains who are the plaintiffs to this lawsuit, is unpersuasive. First, *Porter* is not relevant to the current dispute because that case involved different employees (firemen) and a different argument about qualifying for overtime pay (whether the firemen were "in an occupation 'closely related' and 'directly essential' to the product of goods for commerce"). *Porter*, 208 F.3d at 809–10. *Porter* did not

answer the principal question addressed in this case, which is whether the predecessors of the current Captains were exempt as highly compensated employees.

MSA acknowledges these differences but contends that *Porter* is still relevant as evidence of good faith and reasonable belief because "the predecessor employees to the Platoon Captains did not join the *Porter* lawsuit." ECF No. 38 at 31. MSA continues: "The *Porter* case alone undergirds the idea that the Captains were objectively exempt, since they did not join the other plaintiffs in the *Porter* class action suit, and the employer should not be disabled from asserting a good faith exemption now that the Platoon Captains changed their minds." *Id.* MSA's argument that the present Plaintiffs are bound by the decisions of their nearly seventy-year-old predecessors in the job is not persuasive. MSA's argument also implies that the onus of FLSA compliance falls on the employees and what they are willing to accept, not the employer and what the employer owes, which does not comport with FLSA case law. *See Alvarez*, 339 F.3d at 910 (holding that an employer must show that it "actively endeavored to ensure" FLSA compliance to meet the good faith and objective reasonableness prongs of section 260).

The Court also rejects MSA's argument that its predecessor contractors classified the Captains as exempt. While MSA may have been relying on what had become standard practice, its reliance on that practice amounts to little more than a

bald assertion that it thought it was following the FLSA, which is not enough to

meet MSA's burden under section 260.  *See First Citizens Bank*, 758 F.2d at 403.

Further, the first responder regulation was enacted in 2004, which clarified the

FLSA's application to certain emergency personnel.  29 C.F.R. § 541.3(b).  While

MSA did not take over the Hanford contract until 2009, the Court finds that

reliance on a decades-old case when the law had since been updated is not

evidence of good faith or reasonable grounds.  ECF No. 39 at 23.

MSA also states that their exempt classification of the Captains was

supported by an opinion written by a regional office of the National Labor

Relations Board.  ECF No. 38 at 32.  The opinion, issued in 1990, addressed

whether the Captains and Lieutenants of the Hanford Fire Department could form a

collective bargaining unit under section 9 of the National Labor Relations Act.

ECF No. 39-9; *see also* 29 U.S.C. § 159(c).  The Regional Director found that the

Captains and Lieutenants could not form a collective bargaining unit under the

NLRA because they were supervisory employees.  ECF No. 39-9 at 8–9.

The Court finds unpersuasive that an NLRB Regional Director's decision

supports MSA's good faith in concluding that the Captains are exempt from

overtime pay under the FLSA.  The eight-page opinion never mentions the FLSA

and does not opine on the Captains' qualification for overtime pay.  ECF No. 39-9.

MSA argues that, following this NLRB decision, the Captains unionized as

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 36

"exempt" employees. ECF No. 38 at 32. However, at the time, the Captains were classified as exempt by MSA, which arguably would disqualify them as being able to unionize under the NLRA. Further, this repeats an argument that MSA made in relation to the *Porter* case, which is that the current Captains should be bound by the decision of their predecessors not to pursue overtime pay and is an argument that continues to be unpersuasive. The opinion by the NLRB Regional Director regarding the Captains' eligibility for unionization involves different issues, different people, different law, and happened at a different time.

MSA also relies on a history of agreements between the Captains and their employers that the Captains were exempt from overtime pay as evidence of their good faith and reasonable grounds. ECF No. 38 at 32. These agreements include a 2001 letter between the union and Fluor, a preceding contractor; the 2007 CBA with Fluor; and the 2013 CBA with MSA; all of which stated the mutual understanding between the employer and the Captains that the Captains were exempt from overtime pay. *Id.* at 32–34.

MSA's argument that the Captains essentially agreed to being exempt is irrelevant considering that "FLSA rights cannot be abridged by contract or otherwise waived" and "congressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation arrangement." *Barrentine* , 450 U.S. at 740–41. Admittedly, *Barrentine* and its progeny discuss

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 37

liability under the FLSA, whereas here the issue is whether MSA acted with good

faith and a reasonable ground to believe that it followed the FLSA in determining

whether liquidated damages should be applied.  *Id.*  However, allowing

employment agreements to show evidence of good faith and reasonable grounds

would incentivize employers to get employees to illegally waive their FLSA rights

in CBAs or other employment agreements because it would chill any potential

FLSA enforcement by the employees, and, if some employees overcame the

chilling presence of the agreement, would save the employer from the application

of liquidated damages.  An interpretation of the FLSA that would invite employers

to chill FLSA enforcement and secure protection from liquidated damages with

illegal activity would not comport with the purposes of the FLSA.  *See Overnight*

*Motor*, 316 U.S. at 578.

MSA cited some cases that found reliance on a negotiated CBA was

evidence of good faith and reasonable grounds and was enough to meet the

employer's burden under section 260, but these cases are not persuasive.  ECF No.

38 at 37.  In one case, the Third Circuit held that the employer was not put on

notice that it was potentially violating the FLSA, which is a different standard than

what is employed in the Ninth Circuit regarding the application of liquidated

damages.  *Brooks v. Vill. of Ridgefield Park*, 185 F.3d 130, 138 (3d Cir. 1999); *but*

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 38

*see Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir. 2003) (holding that an employer must "actively endeavor" to ensure FLSA compliance).

In another case, the District Court in Massachusetts also relied on a "notice" requirement and also stated that "[d]ouble damages are designed in part to compensate for concealed violations, which may escape scrutiny." *Rudy v. City of Lowell*, 777 F. Supp. 2d 255, 263 (D. Mass. 2011) (citing *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 312 (7th Cir. 1986)). There is no evidence that this was the intention of the FLSA's liquidated damages clause and the Seventh Circuit case that the *Rudy* court relied on does not cite the statute when it makes the quoted assertion. The *Rudy* court's assertion that liquidated damages was intended to apply to "concealed violations" instead implies that liquidated damages are intended to be punitive, an assertion that is also repeated throughout MSA's briefing. That assertion is incorrect. "We have previously held that the liquidated damage provision is not penal in its nature but constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945) (citing *Overnight Motor*, 324 U.S. at 707).

Finally, in the third case, the Fifth Circuit held in 1953 that the employer's reliance on statements made by an expert employed by the union during the

negotiation of the CBA supported that the employer met its burden under section 260 of being reasonable and based on good faith. *Foremost Dairies, Inc. v. Ivey*, 204 F.2d 186, 190 (5th Cir. 1953). Here, MSA argues that the CBA itself is evidence of good faith and reasonable belief. Therefore, the third case does not support MSA's position. The Court concludes that the letter with Fluor and the 2007 and 2013 CBAs do not support MSA's position that it acted in good faith or on reasonable grounds when it did not pay the Captains overtime pay.

MSA also cites to a letter written by legal counsel to Fluor finding that the Captains were exempt from overtime pay as evidence of their good faith and reasonable grounds. ECF No. 38 at 34. In this 1999 letter, the author states that the Captains are exempt from overtime pay under the FLSA because "their primary duty consists of the management of a customarily recognized subdivision of the fire department, and they regularly direct the work of two or more other employees." ECF No. 39-11 at 13. While this letter is more relevant to supporting MSA's good faith and reasonable grounds argument, it is not enough to meet MSA's burden under section 260, because this letter is now twenty years old and does not take into account changes in the law since then, such as the first responder regulation enacted in 2004 of which MSA should have been aware.

Finally, MSA argues that the first responder regulation did not trigger a requirement to re-evaluate the Captains' status as exempt employees because the

DOL stated that it had "'no intention of departing from . . . established case law.'" ECF No. 38 at 35 (quoting 69 Fed. Reg. at 22129). The ellipses inserted by MSA into this quotation skips over an important word: "The Department has no intention of departing from *this* established case law." 69 Fed. Reg. at 22129 (emphasis added). The "this" that MSA omitted refers to the prior two paragraphs of the DOL's preamble, which collected cases from federal courts across the country holding that first responders, such as firefighters, are not exempt from the FLSA's overtime pay rule as executive, administrative, or professional employees, even if they direct the work of other first responders. *Id.* MSA is correct that the first responder regulation was not intended to change established case law, but the established case law at the time held that firefighters with similar responsibilities to the Captains in this case were not exempt from overtime pay. *Id.* While MSA did not enter into the contract until 2009, the preamble undercuts MSA's reliance on the actions of its predecessors.

MSA also presents an email between an attorney, Alex Skalbania, and one of the plaintiffs in this case, Chad Riley, as proof that it meets its burden under section 260. ECF No. 38 at 36. In this email, Mr. Skalbania states that "there are court cases going both ways on the question of whether Fire Captains are exempt or not when it comes to FLSA [overtime]." ECF No. 39-12 at 2. According to MSA, this email shows that it should not be "punished" with liquidated damages because even

the Captains agree that their overtime pay classification is a close question.  ECF No. 38 at 36.  However, even if the Captains had agreed it was a close question, that is not dispositive as to whether MSA acted in good faith, and there is no evidence that MSA relied on this email prior to the beginning of this lawsuit.  Post hoc explanations by an employer do not meet the burden to overcome the application of liquidated damages.  *See Alvarez*, 339 F.3d at 910.  Additionally, this is far from the example provided in *Foremost Dairies*, in which "an expert employed by the Union stated his opinion that there was no [FLSA] coverage and that the opinion was shared by defendant's lawyer and by a lawyer representing another dairy company." *Foremost Dairies*, 204 F.2d at 190.

The imposition of liquidated damages is not intended to be punitive; liquidated damages is only intended to compensate the misclassified employees for losses too difficult and obscure to otherwise prove.  *Brooklyn Sav. Bank*, 324 U.S. at 707.  Several of MSA's arguments involve an attempt to convince the Court not to punish it for what it claims to be reasonable behavior, but the Court is not persuaded. The Court finds that MSA's proposed evidence of good faith or reasonable grounds for belief that it followed the FLSA regarding the Captains is not persuasive and does not meet MSA's burden under section 260.  Therefore, the Court imposes liquidated damages.  29 U.S.C. § 216(b) ("Any employer who violates the provisions of . . . section 207 of this title shall be liable . . . in the amount of . . . their

unpaid overtime compensation . . . and in an additional equal amount as liquidated damages).

### *Statute of Limitations*

The parties dispute whether the statute of limitations in this case should be two or three years.  ECF No. 36 at 45; ECF No. 38 at 38.

The statute of limitations for any violation of the FLSA is two years after the cause of action accrued, except that "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).  An employer acts willfully within the meaning of section 255(a) when "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  An employer that acts "unreasonably, but not recklessly" in determining its compliance with the FLSA does not act willfully.  *Id.* at 135 n.13.  The determination of willfulness is a mixed question of law and fact.  *Alvarez*, 339 F.3d at 908.  The burden of proving willfulness is on the plaintiff.  *Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037, 1059 (D. Or. 2010).

The Captains argue that MSA acted willfully in its FLSA violations because of a meeting between representatives of the Captains and MSA.  ECF No. 36 at 45. At this meeting, the representative of the Captains stated that MSA should "[d]o an

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 43

FLSA audit on captains to determine accurate classification. If deemed exempt, look into wages to balance lieutenant and captain." ECF No. 37-18 at 6. Despite being made aware of the Captains' desire to investigate their qualification for overtime pay, the Captains claim that MSA did not reevaluate their exempt status. ECF No. 36 at 45.

However, the undisputed facts show that MSA was ready to conduct this audit. An email was sent to Kevin Miller, a Plaintiff to this lawsuit, requesting a meeting regarding his request for an audit for "Fair Labor Standards Act related stuff ([overtime] calculations)" so that MSA could "fully understand the scope of the audit you would like performed." ECF No. 39-13 at 2. In response to this email, Mr. Miller replied that he no longer was interested in the audit. *Id.*

This request for an audit, and MSA's supposed inaction following the audit, is the Captains' sole piece of evidence in favor of its willfulness argument. *See* ECF No. 36 at 45; ECF No. 42 at 44; ECF No. 51 at 24. With this single piece of evidence, the Captains chiefly rely on an isolated statement in *Alvarez*, stating that MSA "took no affirmative action to assure compliance with [the FLSA]." ECF No. 36 at 45; *Alvarez*, 339 F.3d at 909. However, *Alvarez* also says that a court should not "presume that conduct was willful in the absence of evidence." *Id.* Here, while the Court rejects MSA's arguments as to liquidated damages, the undisputed facts do not support that MSA acted willfully or in reckless disregard of the FLSA's

requirements. The Captains did not meet their burden with this one piece of evidence and single line from a single Ninth Circuit case. Therefore, the Court finds that the appropriate statute of limitations is two years.

### Calculation of the Captains' Regular Rate and Credit to Overtime Pay

The parties dispute what payments are included in the Captains' regular rate of pay and whether the Captains' wages received for the overtime periods worked should be credited against any award to the Captains for MSA's liability under the FLSA. ECF No. 38 at 42; ECF No. 42 at 33.

As has been previously discussed, overtime pay is calculated by paying an employee one and one-half times "the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). An employee's "regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee," but does not include several types of excepted payments defined in subsections 207(e)(1)–(8). 29 U.S.C. § 207(e). Subsection five states that "extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are worked . . . in excess of the employee's normal working hours or regular working hours" is not included in an employee's regular rate. 29 U.S.C. § 207(e)(5). Regulations provide further guidance, stating that "where the employee's normal or regular daily or weekly working hours are greater or less than 8 hours or 40 hours respectively and his contract provides for the payment of

premium rates for work in excess of such normal or regular hours of work for the day or week . . . the extra compensation provided by such premium rates, paid for excessive hours, is a true overtime premium to be excluded from the regular rate." 29 C.F.R. § 778.202(b).

Here, it is undisputed that when the Captains would work beyond their normal scheduled hours, whether those were 48 or 72 in a given workweek, the Captains were paid an additional straight time rate. ECF No. 39-3 at 23; ECF No. 39-32 at 4 ("[I]n every instance that Plaintiff as a Platoon Captain has worked unscheduled overtime hours above the 40-hour FLSA threshold, Defendant has paid Plaintiff as a straight time rate instead of at time and one half his regular rate of pay."). The additional straight time rate is a payment for work "in excess of such normal or regular hours of work for the day or week." 29 C.F.R. § 778.202(b). This means the additional straight time rate, paid for unscheduled overtime hours, is excluded from the calculation of the Captains' regular rate of pay under section 207(e)(5). 29 U.S.C. § 207(e)(5). The additional straight time rate also counts as a credit against the overtime compensation that the Captains are due, because "[e]xtra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) shall be creditable toward overtime compensation payable pursuant to this section." 29 U.S.C. § 207(h)(2).

The Captains argue that sections 207(e) and (h) are inapplicable to the premium that they received in working unscheduled overtime hours because, in their view, the fluctuating workweek calculation formula does not apply and therefore there is no credit that needs to be made. ECF No. 42 at 33. Essentially, the Captains tied together their arguments against the fluctuating workweek, the calculation of the Captains' regular rate, and the credit against any overtime pay due. *Id.*

The Court already rejected the Captains' arguments as to the fluctuating workweek, and similarly rejects their arguments against removing the overtime premium from their regular rate and crediting it toward the pay owed to the Captains. The additional straight time rate is an extra payment provided to the Captains "in excess of the employee's normal working hours or regular working hours," that being the 48 or 72 hours that the Captains are expected to work in a given week. 29 U.S.C. § 207(e)(5). Because the additional straight time rate fits an exception under section 207(e), the rate is excluded from the Captains' regular rate. *Id.* And when subsection 207(e)(5) applies, that extra compensation "shall be creditable toward overtime compensation payable pursuant to this section." 29 U.S.C. § 207(h)(2).

Accordingly, the Court finds that the additional straight time rate that the Captains would receive for unscheduled overtime hours, in excess of the 48 or 72

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 47

worked in a given workweek, is not included in the calculation of the Captains'

regular rate.  Additionally, the Court finds that the additional straight time rate paid

during the applicable statute of limitations period for unscheduled overtime hours

is creditable against the damages owed to the Captains.

### The Applicability of Section 207(k)

The Captains move for summary judgment on MSA's request to apply a

special schedule described in 29 U.S.C. § 207(k).  ECF No. 36 at 16 n.2.  MSA

argues that the facts are in dispute regarding the applicability of section 207(k).

ECF No. 40 at 43.

Section 207(k) states that public agencies can comply with the FLSA's

overtime rule as it relates to "any employee in fire protective activities" if they

follow a special schedule.  29 U.S.C. § 207(k).  But the application of section

207(k) "is limited to public agencies," and the section "does not apply to any

private organization engaged in furnishing fire protection . . . This is so even if the

services are provided under contract with a public agency."  29 C.F.R. § 553.202.

If section 207(k) is applicable, then the municipality bears the burden of proving

that it established a section 207(k) work period and that the work period was

regularly recurring, which is a question of fact.  *Adair v. City of Kirkland*, 185 F.3d

1055, 1060 (9th Cir. 1999).

MSA argues that section 207(k)'s applicability is a question of fact due to MSA's performance of "uniquely federal functions" and because MSA's contract with the federal government "involves work like no other 'private' fire department FLSA case." ECF No. 40 at 44. However, while an employer's compliance with section 207(k) is a question of fact, an employer's status as a public agency is not. *See Conway v. Takoma Park Volunteer Fire Dep't, Inc.*, 666 F. Supp. 786, 792 (D. Md. 1987) (deciding whether the employer was a "public agency" as a matter of law to determine the applicability of section 207(k)). Here, the law states that private organizations that provide fire protection services cannot avail themselves of a 207(k) schedule, "even if the services are provided under contract with a public agency." 29 C.F.R. § 553.202. MSA has not argued that it is a public agency within the meaning of the FLSA. *See* 29 U.S.C. § 203(x) (defining public agency). Therefore, MSA cannot utilize the special schedule of section 207(k) because it is not a public agency.

Additionally, MSA argues that it can avail itself of the provisions of Title V of the United States Code and its companion regulations relating to overtime pay for federal firefighters because MSA, "as a federal management contractor, performing uniquely federal functions, at a federal nuclear facility, . . . can avail itself of the federal OPM regulatory exemption." ECF No. 40 at 45. Once again, MSA's argument is foreclosed by the plain text of the statute. The provisions and

regulations of Title V that MSA wants to invoke are applicable only to "employees" as defined in Title V, who are "individual[s] employed in or under an agency." 5 U.S.C. §§ 5102(a)(2); 5542(a). Agency means an executive agency, the Library of Congress, the Botanic Garden, the Government Publishing Office, the Office of the Architect of the Capitol, and the government of the District of Columbia. 5 U.S.C. § 5102(a)(1). MSA, plainly, is none of these things because it is a private organization, specifically, a limited liability company organized under the laws of Delaware. ECF No. 37-37 at 4. Therefore, MSA cannot avail itself of Title V of the United States Code or its companion regulations.

### *Sleep Time and Mealtime*

The Captains argue that summary judgment is appropriate on MSA's affirmative defense as to sleep and mealtime because there is no evidence of an agreement to exclude sleep and mealtime from the Captains' hours worked. ECF No. 36 at 39 n.8. MSA argues that there is a dispute of fact as to both sleep and mealtime because of a declaration from Fire Chief Norbert Kuhman. ECF No. 40 at 45–47; ECF No. 40-5.

For an employee that is required to be on duty for 24 hours or more, eight hours of sleep time and meal periods constitute hours worked. 29 C.F.R. § 785.22(a). An employer and an employee can agree to exclude meal periods and sleep time from hours worked by express or implied agreement. *Id.*

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 50

Three separate witnesses agreed that there is no agreement between the Captains and MSA that sleep or meal periods are excluded from the hours worked in a workweek. The first was Chief Kuhman, who stated "There's no unpaid time for meals or sleeping." ECF No. 37-38 at 51. The second was Mary Murphy, the Director of Employee and Labor Relations for MSA, who stated "I do know that [the Captains] get paid for the full 24-hour shift. So I would assume they are being paid for their sleep time." ECF No. 37-39 at 16. The third is Aaron Raddock, an expert retained by MSA, who stated that, based on his knowledge, there was no agreement to exclude sleep time from the Captains' hours worked in a work week. ECF No. 37-40 at 8.

The only evidence that MSA provides in support of a potential express or implied agreement to exclude sleep and meal periods from a calculation of the Captains' hours worked is a declaration by Chief Kuhman submitted along with MSA's reply to the Captains' Motion for Summary Judgment. ECF No. 40-5. In that declaration, Chief Kuhman states that the CBA between MSA and the Captains does "not provide any extra compensation for meals whether regular time or overtime." ECF No. 40-5 at 3. He then states that the "2013 CBA set a Fixed Weekly Rate for the entire work week including any meal time. It did not provide for any extra compensation for meal periods." *Id.* at 4. Additionally, he states that "the 2013 CBA set a Fixed Weekly Rate for the entire work week including any

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 51

sleep time. It did not provide for any extra compensation for sleeping on the job."
*Id.*

Contrary to MSA's assertions, Chief Kuhman's declaration does not dispute the Captains' arguments, which is that there was no express or implied agreement to exclude sleep or meal periods from the hours that the Captains worked. In fact, the declaration supports the Captains' position, because it states that the fixed weekly rate includes sleep and mealtime. ECF No. 40-5 at 4. Because the fixed weekly rate includes sleep and mealtime, those hours constitute hours worked. 29 C.F.R. § 785.22(a). Chief Kuhman's contentions regarding "extra compensation" for these periods is irrelevant for the purposes of determining the Captains' number of hours worked in a workweek. The Court finds no genuine issue of material fact. Therefore, the Court grants summary judgment on this issue to the Captains, and MSA's affirmative defense on sleep and meal periods is dismissed.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiffs' Motion for Partial Summary Judgment, **ECF No. 36**, is **GRANTED in part** and **DENIED in part**.

2.    Defendant's Motion for Summary Judgment, **ECF No. 38**, is **GRANTED in part** and **DENIED in part**.

3.     The Captains are, and have been, eligible for overtime pay under the FLSA and do not qualify for any exemption.

4.     The Captains' overtime pay shall be calculated using the fluctuating workweek method.

5.     The Captains' regular rate used to calculate overtime due shall be determined without regard to the additional straight time rate that the Captains received for working unscheduled overtime, and the straight time pay provided for work of unscheduled overtime hours is creditable as overtime pay.

6.     Liquidated damages under 29 U.S.C. § 216(b) shall apply.  The statute of limitations shall extend back two years.

7.     MSA is not a public agency within the meaning of the FLSA and there is no express or implied agreement to exclude sleep and mealtime from the hours worked by the Captains.  Therefore, MSA's affirmative defenses relating to section 207(k) and the exclusion of sleep and mealtime are dismissed.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** July 22, 2019.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 53